COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Chafin and Senior Judge Haley

ROBERT WILLIAMS

v.      Record No. 1582-15-2

PRINCE GEORGE DEPARTMENT
 OF SOCIAL SERVICES                           MEMORANDUM OPINION[*]
                                                   PER CURIAM
ROBERT WILLIAMS                                  APRIL 26, 2016

v.      Record No. 1752-15-2

PRINCE GEORGE DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
James F. D'Alton, Jr., Judge

(Jessica B. Mauger, on brief), for appellant. Appellant submitting
on brief.

(Kevin B. O'Donnell; Joan M. O'Donnell; John A. Kirkland,
Guardian *ad litem* for the minor child, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.


Robert Williams (father) appeals orders terminating his parental rights and approving the

goal of adoption. Father argues that the trial court erred by finding that the evidence was sufficient

to (1) terminate his parental rights pursuant to Code § 16.1-283(B)(2) and (C)(2) because "the

conditions which led to the neglect and abuse could be substantially corrected to allow the

children's safe return" and (2) change the permanency plan goal to adoption because he had

"substantially complied" with the recommendations and requests of the Prince George Department

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

of Social Services (the Department). Upon reviewing the record and briefs of the parties, we conclude that the trial court did not err. Accordingly, we affirm the decision of the trial court.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

Father and Tiffany Nimrick (mother) are the biological parents of a child, who was born in March 2007.

The Department first became involved with the family in April 2014. It investigated a complaint alleging that the child was being neglected. There were concerns about the child's hygiene, dental care, and the paternal grandmother's ability to care for the child. At the time, the child was living with his paternal grandmother, and father was living in Virginia Beach. The Department and the paternal grandmother entered into a safety plan.

The child's behavior was "out of control." He recently participated in a VICAP assessment, which recommended psychological treatment and a day treatment counselor.

In May 2014, the Department followed up with the paternal grandmother to check on her compliance with the agreed upon services in the safety plan. The paternal grandmother had not followed the safety plan, and the child's behavior had worsened. Father was now living in the paternal grandmother's home and "was causing a lot of problems with the home." The Department subsequently learned that the police had been called to the home seven times between May and July 2014.

On June 2, 2014, the Hopewell Juvenile and Domestic Relations District Court ("the Hopewell J&DR court) conducted a custody hearing. The child had been the subject of a custody matter for several years. The Hopewell J&DR court entered a protective order that mandated the

father and paternal grandmother to comply with the safety plan and cooperate with the Department. The matter was transferred to the Prince George Juvenile and Domestic Relations District Court (the Prince George J&DR court).

The Department conducted a family partnership meeting on the same day, June 2, 2014. Some of the goals included father and paternal grandmother (1) obtaining individual and family therapy, (2) seeking psychiatric services and therapy for the child, and (3) improving their relationship.

Throughout the summer of 2014, the paternal grandmother reported incidents of father's anger and volatility. She stated that in August 2014, father had thrown a crutch at the child and almost struck him. Based on these incidents, the Department removed the child from the home. On August 21, 2014, the Prince George J&DR court entered an emergency removal order.

On October 21, 2014, the Prince George J&DR court entered an adjudicatory order finding that the child has been abused or neglected. It also entered a dispositional order approving the initial foster care service plan with concurrent goals of return to own home and relative placement.

Father told the Department that he was diagnosed with oppositional defiance disorder. The Department required the father to complete a psychological evaluation, participate in counseling, obtain stable housing and employment, participate in parenting classes, and submit to background checks and random drug screens. The Department referred father for a psychological evaluation and counseling. Father sought mental health services, including medication management, through District 19 Community Services Board.

By March 2015, father had not consistently participated in treatment for his mental health issues and missed several appointments related to his medication management. He did not participate in family counseling to address issues with the paternal grandmother, but he told the Department that she refused to participate. In addition, he did not participate in individual

counseling or parenting classes. The Department determined that "father made minimal progress toward the goals outlined by" the Department.

The child has extensive needs. When the child entered foster care, he was diagnosed with ADHD and had symptoms of a mood disorder. Since October 2014, he has been seeing Melissa Findlay, a licensed clinical social worker. Ms. Findlay described the child as "extremely hyperactive, inattentive and impulsive." She opined that "the conflict in the child's home caused traumatic responses." The child needs "a stable, consistent, mature parent to be able to provide constant structure and attention to meet his needs and address the ongoing behaviors he has." Despite these challenges, the child was thriving in foster care.

On March 10, 2015, the Prince George J&DR court approved a new foster care plan with the goal of adoption. Father appealed this order to the circuit court.

On April 6, 2015, the Department filed a petition to terminate father's parental rights. After a hearing on July 14, 2015, the Prince George J&DR court entered an order terminating father's parental rights. Father appealed this order to the circuit court.

The parties appeared before the circuit court on September 22, 2015. At the conclusion of the Department's evidence, father made a motion to strike, which the trial court denied. Father did not present any evidence. After hearing arguments, the trial court found that it was in the child's best interests to terminate father's parental rights and approve the permanency planning goal of adoption. This appeal followed.

## ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16

(1986). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Father argues that the trial court erred in terminating his parental rights and approving the goal of adoption. He contends he was making progress in the Department's goals because he contacted District 19 for mental health services and medication management. He acknowledges that he has not consistently participated in treatment for his mental health, but asserts that this can be corrected in "a reasonable amount of time."

The trial court terminated father's parental rights pursuant to Code § 16.1-283(B), (C)(1), and (C)(2). According to Code § 16.1-283(C)(2), a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

In Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)), the Court explained,

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

The Department presented evidence that father made "minimal progress" toward the Department's goals. He did not substantially remedy the situation that led to the child being placed in, and remaining in, foster care. Father did not take any parenting classes or participate in individual counseling. He did participate in mental health services through District 19, but his

- 5 -

participation was inconsistent. He did not participate in family counseling. Father has been unable and unwilling to remedy his situation.

The child's counselor testified that the "child has needs above and beyond a normal child of his age." He was "disconnected" from his father. The counselor further explained that "the child's placement in foster care did not cause the abnormal behaviors." She opined that if the child did not address his issues "immediately," he would be at "high risk of developing anti-social behaviors."

The evidence proved that father had not addressed his own mental health issues, despite the services provided by the Department. At the time of the trial, he was not in a position to address the child's needs.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Accordingly, the trial court did not err in finding that it was in the child's best interests to terminate father's parental rights pursuant to Code § 16.1-283(C)(2).[1]

Furthermore, it did not err in approving the goal of adoption because, as discussed above, father had not substantially remedied the situation that led to the child remaining in foster care. In addition, there were no relatives available for placement.

---

[1] When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds. See Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the trial court erred in terminating father's parental rights pursuant to Code § 16.1-283(B) and (C)(1).

CONCLUSION

For the foregoing reasons, the trial court's rulings are affirmed.

<u>Affirmed.</u>